UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACEY MERCER, <br><br> Plaintiff, <br><br> -v- <br><br> RAMPART HOTEL VENTURES, LLC, <br><br> Defendant. | 19 Civ. 3551 (PAE) <br><br> OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

Plaintiff Stacey Mercer brings this brings this action against Rampart Hotel Ventures, LLC ("Rampart"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* (the "ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 296(2)(a); and the New York City Human Rights Law, N.Y.C. Admin Code § 8-107(4)(A).

On June 19, 2019, Rampart moved to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Dkt. 11. On June 20, 2019, the Court referred the motion to the Hon. Gabriel W. Gorenstein, United States Magistrate Judge, for a Report and Recommendation. Dkt. 14.

Before the Court is Judge Gorenstein's January 16, 2019 Report and Recommendation, Dkt. 20 ("Report"), as well as Mercer's objections, Dkt. 21 ("Objections"), and Rampart's response to those objections, Dkt. 23 ("Response"). The Report recommends that the Court grant Rampart's motion to dismiss for lack of personal jurisdiction, and that Mercer be given leave to file an amended complaint.

For the following reasons, the Court adopts the Report in its entirety.

I.  **Background**[1]

The Court adopts the Report's detailed account of the facts and procedural history, to which no party objects. The following summary captures the limited facts necessary for an assessment of the issues presented.

Mercer, a New York City resident, suffers from paraplegia and uses a wheelchair. Compl. ¶¶ 7–8. She thus has a "qualified disability" under the ADA. *Id*. Rampart "owns and/or operates" a hotel called "French Quarter Suites" located in New Orleans, Louisiana. *Id*. ¶ 1. Rampart is a limited liability company incorporated and domiciled in Louisiana. Report at 2. Through its website, http://www.frenchquartersuites.com, Rampart takes room reservations and communicates information about hotel features and room availability to the public. Compl. ¶ 1. Mercer alleges that Rampart "uses its financially interactive website to do business (or seek to do business) with individuals in this District by taking (or seeking to take) reservations and payments from such individuals." *Id*. ¶ 4.

As of March 15, 2012, the ADA required that all of Rampart's reservation systems, including its website, (a) identify and describe disabled accessible features of the Hotel in detail; (b) identify and describe specific accessibility features of ADA compliant guest rooms in detail;

---

[1] The Court's account of Mercer's factual allegations is drawn primarily from the Complaint. Dkt. 1 ("Compl."). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations, while still "resolving all doubts in [plaintiff's] favor." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94 Civ. 5620 (JFK), 1997 WL 401810, at *2 (S.D.N.Y. July 16, 1997). Accordingly, in connection with defendants' motion to dismiss, the Court has considered Rampart's memorandum of law in support of its motion, Dkt. 12; the declaration of Joseph A. Jaeger, Jr., in support of Rampart's motion to dismiss, Dkt. 13, and exhibits attached thereto; Mercer's memorandum of law in opposition to Rampart's motion, Dkt. 17 ("Pl. Mem."); the declaration of Nolan Klein, Esq., in opposition to Rampart's motion, Dkt. 18, and the exhibit attached thereto; Rampart's reply in support of its motion, Dkt. 19; Mercer's objections the Report, Objections; and Rampart's response to Mercer's objections, Response.

(c) permit disabled individuals to assess independently whether the Hotel common areas and guestrooms meet their individual accessibility needs (by describing accessible and inaccessible features); and (d) allow reservations to be taken for accessible guestrooms in the same manner as for non-accessible guestrooms. *Id*. ¶ 2 (emphasis omitted) (citing 28 C.F.R. § 36.302(e)(1)).

On an unspecified date, while considering a trip to New Orleans, Mercer visited Rampart's website to assess the hotel's accessible features and determine whether she could independently reserve an accessible room at the hotel in the same manner as those seeking to reserve non-accessible rooms. *Id*. ¶ 20. Although the site detailed the features of standard suites and other amenities, it did not provide information on accessible rooms or ADA compliance. *Id*. ¶ 21. Mercer was therefore unable to learn from the website about the accessible features of the hotel. *Id*. ¶ 20. Mercer does not, however, allege that she purchased any product or service from Rampart via its website, or that Rampart offers hotel accommodations or any other goods or services in New York State.

## II. Applicable Legal Standards

### A. Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v.*

3

*U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012).

### B. Personal Jurisdiction

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano*, 286 F.3d at 84; *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

"Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all

doubts in their favor." *Dorchester*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citation omitted). Accordingly, New York's long-arm statute, New York Civil Practice Law and Rules ("C.P.L.R.") § 302(a), governs the claims in the instant action. *See id.*; *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000).

Under C.P.L.R. § 302(a)(1), two conditions must be met for a court to exercise personal jurisdiction over a non-domiciliary defendant. First, the defendant must "transact . . . business within the state or contract[] anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). Second, the cause of action must arise from the "act[s] which are the basis of jurisdiction." *Id.* This second condition requires a showing that the contacts with the state had a "substantial relationship" to the cause of action. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

Section 302(a)(1) is a "single act" statute; therefore, the defendant need not have engaged in more than one transaction in, or directed to, New York for New York courts to invoke jurisdiction. *See Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 70 (2006). Jurisdiction under § 302(a)(1) exists even if "the defendant never enters New York, so long as

the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (citations omitted); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (finding personal jurisdiction based on a single transaction where defendant was not physically present in state). A court may also find jurisdiction based on the totality of the defendant's conduct. *See, e.g.*, *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." (citations omitted)).

Section 302(a)(2) provides an alternative basis for personal jurisdiction over a defendant who "in person or through an agent . . . commits a tortious act within the state." C.P.L.R. § 302(a)(2). As with § 302(a)(1), "there is no minimum threshold of activity required so long as the cause of action arises out of the allegedly infringing activity in New York." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000).

Once a *prima facie* showing of a state-law statutory basis for jurisdiction has been made, the plaintiff must then "demonstrate that the exercise of jurisdiction comports with due process." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81–82 (2d Cir. 2018) (internal alterations omitted).

### III. Discussion

Judge Gorenstein recommends that Rampart's motion to dismiss for lack of personal jurisdiction be granted, with leave to file an amended complaint. Mercer objects to this conclusion on three grounds. All relate to Judge Gorenstein's application of § 302(a)(1).

As to the balance of the Report, to which Mercer has raised no objection, the Court has carefully reviewed Judge Gorenstein's thorough and thoughtful analysis and finds no clear error. *See King*, 2009 WL 2001439, at *4.

1. **"Transacting Business" Under § 302(a)(1)**

Mercer first argues that, contrary to Judge Gorenstein's conclusion, Rampart "transact[s] business" in New York by virtue of its interactive website. For Rampart to "transact business," its activities must be "purposeful" and there must be a "substantial relationship between the transaction and the claim asserted." *Kreutter*, 71 N.Y.2d at 467. Mercer's objection to Judge Gorenstein's conclusion on this point restates nearly word for word the arguments Mercer presented to Judge Gorenstein in its opposition to Rampart's motion to dismiss. *Compare* Pl. Mem. at 11–13, *with* Objections at 11–14. Because this objection simply reiterates Mercer's original arguments, review for clear error is appropriate. *See Dickerson,* 2013 WL 3199094, at *1. The Court has carefully reviewed the Report's analysis of this issue and can find no such error. *See Dickerson,* 2013 WL 3199094, at *1.

In any event, this objection fails under any standard of review. The cases on which Mercer has relied in making this argument are inapposite, as Mercer herself admits. *See* Objections at 14. And Mercer does not cite any legal support for her claim that Rampart, by virtue of maintaining an interactive website, had a "purposeful" presence in New York State. *See Kreutter*, 71 N.Y.2d at 467. As Judge Gorenstein concluded, Rampart's maintenance of the website, without more, cannot subject Rampart to personal jurisdiction here.

2. **Nexus Requirement under § 302(a)(1)**

Mercer next argues that the Report misconstrued § 302(a)(1)'s nexus requirement, to wit, that the cause of action arise from the "act[s] which are the basis of jurisdiction." C.P.L.R. § 302(a)(1). Noting that Mercer had never engaged in a commercial transaction with Rampart,

7

*see* Report at 6, Judge Gorenstein considered other theoretical bases for personal jurisdiction over a non-domiciliary defendant, including cases in which an in-forum transaction between the defendant and third party had caused harm to the plaintiff. *See* Report at 8–9. But he found these third-party transaction cases[2] inapplicable to Mercer, because "the transactions allegedly undertaken by [Rampart's] website in New York—consisting of the alleged booking of hotel reservations with New York residents other than [Mercer]—have not harmed [Mercer] and form no part of [Mercer's] claim." Report at 9. That reasoning was clearly correct.

Mercer counters that personal jurisdiction can alternatively be sustained by Rampart's "highly interactive online conduct in New York." Objections at 17. This objection was timely raised and did not merely repeat Mercer's original arguments, and so the Court considers it *de novo*. Fed. R. Civ. P. 72(b)(3).

However, Mercer's objection fails for two reasons.

First, Mercer misconstrues *Camacho v. Vanderbilt University*, No. 18 Civ. 10694 (KPF), 2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019), on which she heavily relies. Mercer claims that *Camacho* treated the relevant nexus under § 302(a)(1) as "between the alleged ADA violation and the vehicle through which business is done in New York—not between the ADA violation and the defendant's transaction of business with third parties." Objections at 18. Mercer's reading of *Camacho* is wrong. In *Camacho*, a visually impaired plaintiff preparing for the college application process alleged that he had been denied access to portions of the Vanderbilt University website, including the page hosting a financial aid calculator. *See Camacho*,

---

[2] Most cases cited by Judge Gorenstein involved intellectual property claims, where "there was a strong argument . . . that [a non-domiciliary defendant's] transactions with the other persons [in the forum state] were connected to the plaintiff's own claim because the transactions with the other persons actually caused some harm to the plaintiff." *See* Report at 8.

8

2019 WL 6528974, at *6.  The court found that this non-commercial, but distinctly interactive portion of Vanderbilt's website placed it "within the middle of the interactivity spectrum," and proceeded to engage in a "closer evaluation of its contacts with New York residents" to determine whether Vanderbilt had purposefully availed itself of the privileges of conducting activities in New York State by maintaining the page.  *Id.*  The court ultimately found that the University had, in fact, done so, but only because Vanderbilt had "used its [w]ebsite at recruiting events to market to prospective students at those events in New York."  *Id.*  The court pointedly distinguished this circumstance from one where a plaintiff made a "conclusory allegation that Defendant used its nationally available website to solicit students in New York"; such, the court held, "would not be sufficient to establish personal jurisdiction."  *Id.*

Rampart's national web presence—which is not alleged to target or have any special connection to New York—is exactly the kind that the *Camacho* court held insufficient, on its own, to support jurisdiction under § 302(a)(1).  *See also, e.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 250 (2d Cir. 2007) ("[T]he posting of defamatory material on a website accessible in New York does not, without more, constitute "transact[ing] business" in New York for the purposes of New York's long-arm statute."); *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) (because defendants "manifested no intent specifically to target New York supporters or to avail themselves of the particular benefits of New York law" on their interactive website, court could not exercise personal jurisdiction); *Diaz v. Kroger*, 2019 No. 18 Civ. 7953 (KPF), 2019 WL 2357531, at *7 (S.D.N.Y. June 4, 2019) (finding no personal jurisdiction over out-of-state defendant, notwithstanding accessibility of defendant's interactive website in forum state, because company did not deliver goods to any New York zip code); *O'Brien v. Hackensack Univ. Medical Ctr.*, 760 N.Y.S.2d 425, 427 (1st Dep't 2003) ("[M]ere solicitation of

business within the state does not constitute the transaction of business within the state, unless solicitation in New York is supplemented by business transactions occurring in the state.").

Second, Mercer ignores § 302(a)(1)'s requirement that a defendant's transaction of business within the forum state have been "substantially relat[ed]" to the plaintiff's cause of action. *See* Report at 5; *Kreutter*, 71 N.Y.2d at 467. Mercer's notion that an interactive website, standing alone, provides sufficient grounds to hail an out-of-state defendant into court would read the "arising from" prong out of the long-arm statute entirely. Rampart's national web presence, without more, does not support the exercise of personal jurisdiction under § 302(a)(1).

### 3. Nexus Between ADA Claim and Rampart's Forum State Activity

Mercer next argues that there is a nexus between the ADA claim and Rampart's forum state activity, because she was harmed by Rampart's discrimination between disabled and nondisabled New York consumers. Objections at 19. She alleges that, as a disabled person, she was excluded from making reservations in a way that able-bodied New Yorkers were not. *Id.* The Court considers this objection *de novo*. *See* Fed. R. Civ. P. 72(b)(3).

This objection, too, is meritless as a basis for alleging personal jurisdiction. The Complaint does not plead any facts about—or even refer to—transactions between non-disabled New Yorkers and Rampart. *See* Report at 9 (citing Compl. ¶ 4) ("[T]he transactions allegedly undertaken by the defendant's website in New York . . . form no part of plaintiff's claim."). The interactions that Mercer now posits cannot sustain Mercer's claim. In any event, as the Report explained, this is not a case in which a transaction between an in-state third party and an out-of-state defendant might cause harm to a plaintiff who did not do business with the defendant, so as to support the exercise of personal jurisdiction. The alleged third-party transactions relied upon by Mercer do not establish any element of Mercer's claim. *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 340 (2012); *accord Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,

732 F.3d 161, 169 (2d Cir. 2013) ("CPLR 302(a)(1) does not require that every element of the cause of action . . . be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction."). Rather, as the Report rightly observes, the "only connection" between Mercer's claim and the third-party transactions "is that the same website is involved." Report at 10. Mercer's claim cannot viably be said to "arise from" such third-party transactions. *Id.*

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts Judge Gorenstein's thoughtful and perceptive Report and Recommendation. Rampart's motion to dismiss is granted, without prejudice. As the Report recommends, the Court grants leave for Mercer to amend her complaint to enable her to allege facts that may support the exercise of personal jurisdiction over Rampart under § 302(a)(3).

The Court respectfully directs the Clerk of Court to terminate the motion pending at docket 11.

SO ORDERED.

                                                                                  *Paul A. Engelmayer*
                                                                                  Paul A. Engelmayer
                                                                                  United States District Judge

Dated: February 24, 2020
           New York, New York